First case of the day, P.P. v. West Chester Area School District. Dennis McAndrews, together with my co-counsel, Tanya Alvarado, on behalf of the appellants in this matter, I respectfully request to reserve three minutes for rebuttal. That's granted. Thank you. If you'd lift the mic just a little bit, please. This matter involves, I respectfully submit, clear legal issues that surround really two basic issues. First, how long can a district delay in evaluating a child who they eventually find to be in need of special education services and not be responsible for either compensatory education or tuition reimbursement? Before we get too far into this, can we talk about the decision that's before us and what we can do about it? There was a finding as to when the first notice came to the school district, basically November of 2004, and that started the process, which then ended up through the summer and I guess Are you contending that we have the ability to disrupt the factual finding with respect to the notice to the school district? Not that factual finding, Your Honor. There is a predecessor legal issue, though, that the court has to address that each and every tribunal below didn't address, and it's a pure legal issue. The Chester County Intermediate Unit knew about Patrick since he entered school. He was having trouble. He was getting Title I services, and the CCIU was clearly under the record, undisputably, the agent of the district. The record... So you're saying that you are disputing that the first notice was in November of 2004? I'm not disputing that the... Hey, Judge Giles found that the first actual notice, actual notice, to the district was on that November date, and we can certainly work with that date, and we think the district took too long from there. But there's an agency issue here, Your Honor, that nobody addressed. It's completely unaddressed, and we've been raising it... Where is an agency issue briefed for us? Yes. In our brief, we clearly talked about, well, maybe it could have been clearer, but it is in there that the I.U. was the agent of the district, because the... Well, the I... I guess there was knowledge when he was in kindergarten that he had some problems, and he got some services. What else is there that was... That there is an indication of knowledge and notice, knowledge, let's say, that was not responded to? Well... As a factual finding... Carol Gaspar, as a factual finding, Carol Gaspar of the Intermediate Unit, Your Honor, filled out, and it is in the record beginning at 356 and 357, she used West Chester Area School District forms way beyond, well in advance of that November date, in... But that was just an inquiry. No, it wasn't, Your Honor. It was a consent to release information. It was an evaluation report format, and the record, if I could just quote from a page or two, Your Honor, and I'm not going to belabor... Why don't you point to your brief? Because we don't go through the appendices, you know. I understand, Your Honor. Where's this argument set forth? Actually, we do go through the appendices, but really only if the brief calls our attention do we make note of it. All right, I would respectfully invite the Court's attention to pages 29 and 30 of the brief. To fulfill a portion of its child find obligations, the district trains employees of non-public schools regarding referral process who may be in need of special education, as well as indicators, etc. In addition... Now, this child was not in the public school system. This child was never in the public school system. Right, employees of non-public schools. Right, all right. And there was an employee... On the next page, we say, the district contracts with the Chester County Intermediate Unit and trains CCIU employees on the district's referral procedures for children who may be in need of special ed services. All right. And the district's... Well, certainly the date in November that you've given. My point, Your Honor, is that the I.U., under the record, and again, no tribunal, unfortunately, has addressed this despite it being brought before all of them, is that the I.U. is the agent, is the representative of the school district. And so what the I.U. knew, regardless of whether or not they told the district, the district's responsible for it because the district contracts for it. The director of special education of the district said that the I.U. sends out letters on our behalf to conduct child-fined activities. That's on 333 of the record. So... Well, who knew what about how horrible or how deficient, not deficient, about the difficulty? The need. The need. The need. Who knew about this, and chapter and verse, and did nothing? Carol Gaspar knew about it. And the fact of the matter is, Your Honor, once the I.U. knew about it, the district knew about it because they were their contracted agent to provide that information. All right. What did Carol Gaspar know? When and what? When and what is fine. She knew, certainly, that the child was receiving Title I services, which are not special ed services, which are remedial services in first grade. She then filled out, again, using school district forms, a consent to release information to the district. She filled out a referral in the form of a district evaluation report form on 357A, setting out how he was having trouble reading. He was having difficulty with copying. He was having difficulty with tasks, difficulty solving word problems. And he got services. He did not get special ed services. He was not evaluated. That, Your Honor, triggers the special ed evaluation process. That's the problem here, is that Patrick was never evaluated until two years later by the district. There was a delay of two years. Aside from the agency, though, Your Honor, in November, there's no question, and I'll move to that, because it's unquestionably true that the parent wrote to the district in November. There's no question under the law that that triggers their responsibilities. The mere fact that the parent is obtaining an evaluation of her own doesn't give the district a pass to say, oh, we're not going to evaluate. They, in fact, told her, don't sign a permission to evaluate form, that they took two months to send her. Well, now you're arguing that after November they were too slow. Yes. Yeah. I genuinely. What relief does that entitle them to? Where do you get either the tuition reimbursement or the compensatory education or any other relief out of the set of facts before us? All right. Starting November, they had 60 school days to evaluate. That's the Pennsylvania regulation. The federal regulation says they have a reasonable time. Pennsylvania says it's 60 school days. Okay. But, I mean, we are saying they were late. So what was the harm caused in the long run? What is the remedy, particularly when the parents have enrolled the child in a private school prior to initiating part of the public school remedy? Well, to one extent, that's where the Forest Grove decision comes in. There's no question that the parents don't have to avail themselves. The recent decision of the United States Supreme Court. That's very different factually. It's different factually, but a lot of the discussion I would respectfully submit has relevance to what we're talking about here today. But where does it get the parent? First of all, after 60 school days, then if the district hasn't done an IEP, you know, almost immediately thereafter, the child's right to compensatory education starts. This circuit has been clear that where an IEP has not been provided, and the district has an obligation to offer every child in the district an IEP. Even if the child is in private school? Absolutely. What case stands for that proposition? Well, may I identify the statute, Your Honor? Certainly, I believe it's in 1414 of the statute, Your Honor. But isn't there case law limiting? Not to my knowledge, Your Honor. When the parents have unilaterally gone to private school? There is no decision of this circuit that says that IDEA's statement that it must provide an IEP to all children as of the first day of school. There is no decision to that effect. It is 1414, Your Honor, the section of IDEA is 1414, small d, 2A, which says, at the beginning of each school year, each local educational agency shall have in effect for each child with a disability in its jurisdiction an individualized education program. And the child find section of IDEA at section 1412 says that all children with disabilities residing in the state, including children with disabilities in private schools, regardless of the severity of their disabilities, must be identified, located, evaluated, and a practical method be implemented to provide them with services. Before your time runs out, there are two statute of limitations issues. Yes, Your Honor. That our district courts seem to be having trouble with here to address. Yes, and I'll go to them very directly. First, the case law of the United States Supreme Court is abundantly clear that you can't retroactively destroy a right unless there's only one interpretation of the law. When do you apply the retroactive analysis? Well, the district court did and said that once IDEA 2004 came into effect on July 1, 2005, all prior rights outside of that, and by the way, it's not a two-year statute of limitation. It is a complex statute, and Judge Giles only spoke of one of the two sections. There's two sections, and our stage two brief sets out those two sections. The first section is when a parent requests due process. If that's a two-year period, and then there's a second two-year period about when the hearing officer can adjudicate decisions, which goes two years back beyond that. So, it's actually a two plus two plus exceptions. So, it's a very complex, and some would say difficult, inartfully drafted statute of limitations. What would your point be, that you can apply the amended statute or the two-year statute retroactively as long as it doesn't destroy existing claims? Well, basically that the existing claims prior to July 1, 2005 are unaffected by the new law, because the new law did not clearly, unambiguously, unequivocally say that those claims were gone, because that's... What occurred before October of 2003? What claim do you have as to conduct prior to that? Is that, again, the child fine? Yes. It's child fine, compensatory education through the summer of 2005. And remember, the district didn't offer an IEP, a final IEP, until November 15. Again, these are questions of law. Can a district delay an IEP until two months into the school year and say to the parents, oh, you should have just waited? All right. We'll hear from you on rebuttal. Thank you. Thank you. Can I have my approach back? Yes, please. Good morning, Your Honors. My name is Jennifer Donaldson. I am counsel for the Westchester Area School District, who is the appellee as well as the cross-appellant in the matter before the court today. I want to first address some of the issues that opposing counsel, Mr. McAndrews, had raised regarding some alleged facts. This matter is here on its third level of appeal. There have been five other officers of the court and administrative officers who have heard these facts and unanimously, for the most part, have found them to weigh against the appellants and in favor of the district. There is no standard of review that would allow this court to alter those findings of what the appellants are putting forth as their justification. They only cite the testimony from the appellant, Rita P., as their reasoning for trying to allege a fact that something occurred in January, February, or March of 2003, when the standard is that it must be non-testimonial, extrinsic evidence that would only warrant any standard of review allowing this court to reverse such specialized fact-finding that has occurred. The argument that the school district, in fact, did know when Patrick was in kindergarten that he was having problems and under child-fine, the claim that they should have, I guess, searched him out and made sure that there was not. The finding facts specifically include that the district did, in fact, meet all of its child-fine obligations and that the district, there's no fact that establishes the district was in any way aware of this child prior to November 22nd of 2004. Well, that's not really true, is it? His kindergarten teacher recommended Title I services, and he received Title I services. Did he not? Through the intermediate unit, not from the school district, which are different entities, and the IU is not an entity here involved in this litigation. In regards to the allegations regarding what Carol Gaspar, the intermediate unit employee, did or didn't do, those actions are not imputed to the school district. In fact, even the parents admit in their testimony that Ms. Gaspar told them what to do. She told them that the parents need to put in writing their request for an evaluation. Ms. Gaspar testified, and the parent may disagree, but the credibility determinations went in favor of Ms. Gaspar and the other district witnesses that testified that Ms. Gaspar told the parent to do this, and the parent did not follow through. Has the agency status of the IU as an agent of the school district or its knowledge being imputed to the school district, has that been raised and briefed and decided at any stage? It has been briefed before this court. However, it has not been briefed or made as an allegation before any of the courts below, specifically the due process hearing where it would have had to first be raised. And if I can refer the panel to page 32 of the district's second step brief, that's where the district has alleged this claim is waived. Nonetheless, as I said, the facts show that pursuant to the standard that was established by the lower district court in the case of Alex K. versus Wissahickon School District, the district did everything it needed to do to comply with its child find obligations by publishing its notices and informing the parent that they need to put a request for an evaluation in writing. The parents admit Carol Gaspar did that. The parents also admit, more importantly to get to the statute of limitations issue here, the parents admit that they knew as far back as kindergarten, and certainly in 2003 when they alleged they were making these requests, they knew, or at least should have known, of the problems that they're complaining of now. And that goes to what the standard is that the Congress has written into IDEA 2004 as the statute of limitations for asserting claims. There did seem to be a significant delay in processing the permission to evaluate form. Can you comment on what accounted for that delay? Absolutely. The district would respectfully disagree that it was an unreasonable delay. What occurs, and what opposing counsel has left out of his argument, is that there's a process. There are forms for everything that goes along in this process. What happens is a parent must put in writing their request for an evaluation. The school district must then consider that request and determine if they're going to grant the request or deny the request. Once they make that decision, then they issue the permission to evaluate form. The district received this request as found as a finding of fact on November 22nd of 2004. They, within a week, issued requests for release of information because, as the court noted earlier, the student had never been in any public school. So they needed to get records from the private schools. Then in January of 2005, the very next month after issuing the request for information, they had a multidisciplinary team meet, consider the information about the student who they knew nothing of prior to, and said, yes, parent, we're going to grant your request to conduct an evaluation, and here's our permission to evaluate form and all the evaluations that we as a school district want to do. When the parent received this permission to evaluate, they informed the school district that the evaluations that the district said they wanted to do were already being done by a unilaterally, privately obtained, independent evaluator that the parents went out on their own prior to contacting the district for an evaluation to get. The reason the district then had to not go forward with that permission to evaluate and the assessments listed there are that those assessments are invalidated if they're done a second time. So because the parents gave the right of the first crack at evaluating this kid to an independent evaluator, the school district was then usurped of that opportunity to do the evaluations they wanted to do and was left at the mercy of this independent evaluation that was already underway to wait and see what came of it. Well, there's no issue that the evaluation was in any way improperly done or inaccurate. Correct. That was also a specialized finding of fact that once the school district received the evaluation report on April 5th then of 2005, two days later the district issued a second permission to evaluate. That is certainly not an unreasonable delay in saying, okay, now that we've gotten your independent evaluation that you went and got and did everything we initially wanted to do, these are the additional things that we want to do. And then the school district has 60 days from not November of 2004 when the parent says, will you do an evaluation? But the statute says that the school district has 60 school days from when the parent signs that permission to evaluate giving written consent to do the actual assessments that the school district is doing. Then the parents did promptly sign that, but 60 school days puts us into September of 2005. The school district even exceeded that deadline and issued its evaluation report on September 1st, 2005 before school started. School didn't even start that year until September 6th. Then once they issued their evaluation report, only when has the student been identified for special education services and is entitled to an IEP. So the argument that an IEP should have been developed earlier is just procedurally inaccurate. And the IEP was then developed approximately 10 days later, less than that. When a district would have 30 days to do so otherwise. But in the meantime, before even receiving the evaluation report from the district, the parents unilaterally removed the student and said, we're going to place him at the benchmark school on our own, because they didn't like that the school district's initial draft of the report wasn't finding the student eligible for a specific learning disability in math. So to answer your question, Judge Frank says, no, I don't think that there was an unreasonable delay in when any of the things that the school district tried to do were actually done and completed. Instead, the parents, on the other hand, if this court were to ever get to the equities prong of the Burlington-Carter test of looking into a tuition reimbursement case, which may I point out, should be the only potential remedy there is in this case is tuition reimbursement, not compensatory education. Because the student never attended. Yeah, because he wasn't in. Right. And that is what the Third Circuit said in the Burlington case, is that for a student unilaterally placed in a private school, the only available remedy would be tuition reimbursement. And here's a three prong test to figure out if that would be warranted. Here we don't meet that three prong test, because all the fact finders below have found that not only was the evaluation report appropriate, the IEP was appropriate, and if you look at the equities, everyone found that the parents simply, in their words, jumped the gun in placing the student in a private school. Before giving the district an opportunity to present what it could offer as a free, appropriate public education. Could you go back over what you said at the outset with respect to the IU and the agency aspect? You mentioned it was on page 32 of the second stage brief? Yes. Which brief is that? That would be the district's initial brief, which I believe is referred to as the second step brief, because the appellants filed the first step brief. Okay. So we did point out that the red. It's simple, but we understand it. It would be the bigger red one. Is it answered by the appellant, that aspect of the case? No, it's not. Nowhere in their first step brief where they had the opportunity to respond to my argument, did they in any way point out where in the record below they actually preserved this issue? And now you referenced part of the appendix for authority on that proposition. Absolutely. Not case law as such. I did cite the drinker versus colonial case, which sets the law on preserving issues and does go to the waiver argument that we're making. Regardless of that, the fact of the matter is that the form that Mr. McAndrews was referring to earlier when he spoke was not a form for district services, and I note that in my footnote, that the form provided was actually for non-public school services. But you could argue that once being put on notice, if Carol Gaspar represents the district in this, they were put on notice and the child find obligations then would kick in, would they not? Carol Gaspar is an intermediate unit employee, is not an agent of the district. The district's only obligation is to do the training. But if she were, if the duties were deemed, and that would constitute notice to the district, notice to her would be deemed constitute notice to the district, and that would implicate the child find obligations, wouldn't it? Even if that were correct, in this fact pattern, as I indicated, Carol Gaspar did meet the child find obligations. The district cannot. She told the parents what to do. She told the parents what to do, and that's the child find obligation. To read the Forest Grove versus TA Supreme Court case that was just issued in June of this year, to only look at one provision of that, of the IDA, is incorrect. And that is exactly what the Forest Grove court did. They said you cannot look at the language of just one subsection of the IDA. You have to look at it all. And I would like to also point out that the Forest Grove decision does give this court some guidance on how to interpret the statutory interpretation of anything that possibly could be misleading in the language of the IDA, such as the statute of limitations issue. The Forest Grove court, what they did in looking at two subsections that the parties were discussing were somehow incongruous or confusing, looked to the federal register, specifically looking to the comments written by those who wrote the federal regulations implementing the IDEA for the answer. And I ask this court to follow that same analysis and look at the comments to the federal regulations that are found in the federal register that say the opposite of what Mr. McAndrews was saying about a 2 plus 2 statute of limitations found in this IDA. Can you give us a page cite to Forest Grove? I cannot, Your Honor, but I could afterwards. I want to hear the end of Mr. McAndrews' rebuttal if you have it. You could put it on the record. Okay. In the short term, you have comment on the IDEA's 2004 statute. Yes. Whether it bars any of the appellant's claims. It absolutely does. What's important here is what the court in the district court below Judge Shouse found and what the Evan H. Court by Judge Schiller of the Eastern District Court found. The language of this statute is clear. It focuses upon the new or should have known standard and the date that the appellants filed their due process complete. Which of the appellant's claims are barred by the statute? Anything prior to October 5th of 2003. Those claims are barred. But didn't Judge Shouse say there were no violations before that date? Even if you didn't apply a statute of limitations at all, there's no merit to any of these child-fine claims. Is this the right case to decide the statute of limitations? If you were to find that there were no child-fine violations, then the ruling as to October 03 doesn't bar anything, does it? I believe that it's an important case to decide it in because it also involves what the district is bringing in and that is the Section 504 statute of limitations. Furthermore, you want us to decide it? Yes, please. This issue is a huge issue in the field right now and we're looking for some clarity to finally adjudicate this matter. And the 504 issue that was, I believe, incorrectly decided by Judge Giles because the statute that he relied upon to indicate there would not be litigation, frustration of policies in this, he incorrectly cites. He indicates that that section of the IDA allows states to create statutes of limitations for 504 claims and it does not. What statute should the judge have relied on? He should have instead used the Supreme Court's barring analysis in the DiCostello case and used the exception. The exception provides that the general rule, true, is that you should borrow from your state statute for a statute of limitations, except when there is a more analogous, significantly more appropriate statute from which to borrow from. Prior to IDA 2004, there wasn't. But now that we have Congress enacting a statute of limitations for IDA cases, the IDA governs the free, appropriate public education for disabled students. Section 504 through Chapter 15 of the Pennsylvania Code thereby governs the free, appropriate public education of disabled students. It's way more similar than a personal injury statute that may. What about disabled inaction of Pennsylvania versus SEPTA? Again, it's very different from this case. But it did adopt the state personal injury. It did because for that case it involved, I believe, an elevator accident. That is very similar to a personal injury statute. That didn't involve an education case. These education cases are quite different from a personal injury case, like the case that you've cited, Jezreel. And that difference is critical and is very imperative in this case because there is no separate Section 504 claim. Everything in this case that the appellants have alleged have been a denial of a free, appropriate public education, a denial of educational services. What about Mr. McAndrew's contention that you shouldn't apply the statute retroactively so as to bar claims that were already existing? It simply wouldn't be fair because those claimants wouldn't have had notice that they would have lost their rights. That is exactly what the United States Supreme Court talked about in the Landgraf case. You can retroactively apply a statute of limitations as long as it's fair, reasonable, and knowing that there wasn't an unreasonable reliance otherwise. Here, despite Mr. McAndrew's allegation that there was never a statute of limitations before, that's simply incorrect. The Pennsylvania Commonwealth Court always applied a one-year statute of limitations to any claim, whether it was a compensatory education claim or a tuition reimbursement claim. Even the federal courts applied a one-year statute of limitations to tuition reimbursement claims. In this case... Do you have a case for us on that? I'm sorry? Do you have a case for us on that? Yes, the Montoursville School District v. SH, which I believe I've cited in my brief, has specifically interpreted the Bernardsville case to say that a one, possibly two years if there's mitigating circumstances, would be the appropriate statute of limitations. As state agents, hearing officers across the state were bound by the city of Chester v. PCCU to apply state law. Every hearing officer in the state applied the Montoursville standard of one year for a statute of limitations for their compensatory education claims. So parents had no right. Moreover, the Pittsburgh Cane Company case that this circuit decided said there is no vested right to a statute of limitations. I know that there's a lot of cases that are affected by the retroactive application of a statute of limitations. In other words, it seems that the volume of cases that would be affected by this issue is dwindling as time passes. So you won't have the problem several years down the road. That could be true, but it may not be true. Under the appellant's theory, anybody who went to school at any time during the 1970s, 80s, or 90s could still, to this day, on the day they lay on their deathbed, assert a claim because according to them, there was no statute of limitations. So we don't know how many potential plaintiffs could be out there. Your contention is the passage and then the effective date, the six months, is sufficient. When we looked at AEDPA, there was a one-year statute, and we said there should at least be one year. Shouldn't we at least have a two-year window here for bringing of claims because it's a two-year statute? I would respectfully disagree with that because Congress specifically chose the effective date. They made this amendment on December 3rd of 2004, and they chose what effective date they wanted to provide. If they wanted to provide a year or two years, they would have. Such as statutes like the Post-Conviction Relief Act in the state of Pennsylvania, where there the legislature did say we want a one-year grace period. Here, the Congress spoke, I think, to that issue and said from December of 2004 to July 1st of 2005 is reasonably accurate. All right. We've given you extra time. Thank you very much. We can respond to our questions. Thank you very much. Mr. McAndrews, I cut you off in your initial argument because you saved rebuttal time, but if you need extra time, we can respond to our questions. I'll try to synthesize, Your Honor. First, the statement that agency wasn't raised below is absolutely, unequivocally untrue. Where did you respond to the contention at page 32 of the red brief that it was waived? Your Honor, and I'm sorry. I can go look for that now, but may I first say it was. All right, but I'm just saying it says here, when no such claim was made for the district court, this is improper as any such claim is waived. I don't think I, with all due respect, I don't think I have to respond to that in my fourth step brief. I don't think I've waived it by not saying I haven't waived it. It was raised, Your Honor, in the first page of the oral argument before the hearing officer. The very first page of oral argument on 92A. But it's not an issue that you have put as something for us to consider on appeal. Yes, it is. Well, if it is based upon what you cited to us before, it's not there. We don't see the word agency or. Well, I didn't use the word agency. I said child find partner. I mean, Your Honor, they are working together. We raise this at every stage of the proceeding. At page 92A, the opening. But don't you need some law that allows us to find that when the IU does something, it implicates the district and the district is responsible for everything the IU does? I mean, that's a pretty broad assertion that needs to be supported by some case law. Well, with all due respect, Your Honor, I think the record establishes that partnership. To me, this is the first time it has come before this Court. Well, where does the responsibility fall? It falls on the district, doesn't it? The district has an undelicable responsibility. Frankly, they have to find kids in private school no matter what. Here, and I would note. They what? They have to find kids in private school no matter what? Yes, that is how ID is written. Their child find obligations are the same in private and public school. That's in 1412 of the Act. It's in the regulations at Section 121 and 125. That is because ID is intended to find all kids. And Carol Gaspar wrote on 363A of the record, in January of 2004, Your Honor, undisputed, she wrote to the district and said, Patrick is getting Title I services. So, but again, Your Honor, even moving past the agency, the district took over a year to do an IEP. The fact that the parents were getting an independent evaluation doesn't stop the district from evaluating. Many evaluations by districts, by the way, include no psychological testing. There are interviews with parents. There are interviews with teachers. There are observations in school. There was no need to delay this. And they can give tests that parallel but aren't the same as the independent evaluator. The concept, oh, we can just delay it, has no basis in law. And the hearing officer found as a legal conclusion that the delay was inordinate and the delay was wrong and the hearing officer was correct in that. And the right to compensatory education comes whether you're in public or private schools. Think about it, Your Honor. The district had an obligation to get an IEP in place by even using the November date. They had to have some offer to the family by April. They had nothing. It took them until November to finalize the IEP. The evaluation report was way late. And what are parents supposed to do? We are told they jumped the gun. Which among us as parents would say, my kid needs help, my kid has struggled for years, I have given the district notice since last November, I'm not going to go and find a place for my kid to learn. I'm just going to wait and hope. When IDEA says they have to get the evaluation done in a timely manner, when IDEA says they have to find, evaluate, locate, and identify, and when IDEA says you have to have an IEP in place by the first day of the school year. And there's a reason for that. It's so that parents can get programs for their kids and can plan as any parent would be required to do. Thank you. All right. Thank you very much, Counsel. The case was well argued. We'll take it under advisement.